## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT COURT OF PUERTO RICO

| | |
|---|---|
| **IN RE:**<br><br>**INMOBILIARIA BAFCO, INC.**<br><br>Debtor | **CASE NO.: 16-02642 MCF**<br><br><br>**CHAPTER 11** |

## URGENT MOTION FOR USE OF THE CASH COLLATERAL
## AND FOR APPROVAL OF INTERIM ORDER

**TO THE HONORABLE COURT:**

**COMES NOW**, Inmobiliaria Bafco, Inc., hereinafter the "Debtor") through the undersigned attorney and very respectfully **STATES** and **PRAYS**:

### INTRODUCTION

On April 4, 2016 ("the Petition Date") the Debtor filed for relief under the provisions of Chapter 11 of the Bankruptcy Code (Docket No. 1). Since the filing of the bankruptcy petition the Debtor has operated as debtor-in-possession, pursuant to Sections 1107 and 1108 of the Code, in full compliance with all requirements under the Bankruptcy Code and the requirements of the U.S. Trustee.

Debtor's main business is the lease of a commercial real estate property located at Metro Office Park, Calle 2 #14, Guaynabo, Puerto Rico. Prior to the filing of the bankruptcy petition the Debtor entered into several financial obligations with Westernbank Puerto Rico, now Banco Popular de Puerto Rico ("BPPR"). These financial obligations are secured with liens over the real estate property. On or about 2006, the Debtor also executed an assignment of rents as additional collateral in favor of BPPR under UCC No. 2006016602[1], renewed in 2009. Currently, the Debtor

---

[1] See also UCC No. 2009004888.

is leasing the real estate property to various entities all listed on Debtors Schedule G. See Docket No. 1, pp.26-30.

The majority of Debtor's tenants make direct deposits of rents to Debtor's account at BPPR account No. 165252162. On this same date the Debtor has requested permission to the court to maintain this account open for the sole purpose receiving the rent deposits to avoid any disruption in the receipts of rents, at least for the next 45 days.

The Debtor herein requests that this Honorable Court authorize it to use the cash collateral in order to be able to continue operations, maintain the real estate property and leases, to preserve the opportunity to reorganize, pay the employees, taxes, bankruptcy professionals and other related expenses. Debtor requests for the interim use of the cash collateral in order to pay the immediate expenses **during the next seventeen days (Exhibit 1, The Interim Budget)** and to schedule a hearing on a request for a permanent order authorizing use of cash collateral in the ordinary course of the Debtor's business until confirmation of the plan of reorganization pursuant to the monthly budget herein included as **Exhibit 2, the Permanent Budget**.

The Debtor needs to use the cash collateral in order to provide payment of the operating expenses of the estate and maintenance of the assets and leases. This is in the benefit of all parties, it will guarantee the preservation of the assets of the estate, maintenance of the real estate property and the continuance of the leases which are the source of the alleged cash collateral. On the contrary, if the administrative expenses are not paid and the property is not maintained, the Debtor's reorganization process will be halted and the Bank's loan payments will be delayed. The Debtor hereby move this Court, pursuant to Sections 105, 363 and 503(b) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002, 4001(b), and 9014, for the entry of the following orders:

2

a. To authorize the interim use of the cash collateral as per Exhibit 1

b. To schedule a hearing to consider Debtor's request of permanent use of cash collateral

c. A permanent order authorizing use of cash collateral in the ordinary course of the Debtor's business until the Confirmation of Debtor's Plan of Reorganization, as per Exhibit 2.

## FACTS IN SUPPORT TO THE REQUEST FOR USE OF CASH COLLATERAL

1. **Banco Popular de Puerto Rico (BPPR)** and the Debtor (including the Debtor and Limited Guarantors) are parties to a certain Amended and Restated Loan Agreement dated as of June 29, 2009, as amended on June 6, 2014, September 22, 2014 and December 11, 2014 (as amended, the "Loan Agreement" and "Loan Documents") whereby Westernbank Puerto Rico (now Banco Popular de Puerto Rico) granted the Debtor : (i) a credit facility in the principal amount of $11,458,473.11 ("Credit Facility A") and (ii) a credit facility in the principal amount of $1,746,428.52 ("Credit Facility B" and, collectively with Credit Facility A, the "Credit Facilities"). As of April 1, 2016 the total amount of principal due and interest outstanding under the Loan Agreement (in the aggregate, the "Outstanding Indebtedness") is as follows:

| Credit Facility | Principal | Interest |
|---|---|---|
| Credit Facility A 110-0900-2737418-9002 | $10,170,766.69 | ----- |
| Credit Facility B 110-0900-2737418-9003 | $1,566357.31 | $12,496.61 |

2. The monthly payments on the credit facilities are $69,222 approx. determined as follows:

3

    a.  SIXTY THOUSAND TWO HUNDRED AND FIFTY TWO DOLLARS AND FIFTY-TWO CENTS ($60,252.52), with respect to Credit Facility A; and

    b.  EIGHT THOUSAND NINE HUNDRED AND SIXTY NINE THOUSAND DOLLARS AND SIXTY CENTS ($8,969.60), with respect to Credit Facility B.

3.    The representations and warranties set forth by the Debtor in the other Loan Documents are true and correct in all material respects on and as of this date except to the extent such representations or warranties expressly relate to the  value of the collateral and  the current financial conditions of the Borrower and the Guarantors.

4.    As of this date  the  Loan Agreement and all the other Loan Documents are in full force and effect.

5.    The Assignment of Leases, if not invalidated at any time by this Honorable Court, would define BPPR's  "cash collateral" under Section 363(a) of the Bankruptcy Code. 11 USC 363.

6.    The income stream arising from the collection of the rents, qualify as cash collateral pursuant the provisions of 11 U.S.C. Section 363(a). The Debtor reserves its right to raise any defenses it may have with respect to the validity of the alleged "cash collateral".

7.    The Budget submitted herein as **Exhibit 1** in support to the Use of Cash Collateral details the necessary expenses the Debtors need to cover for the proper administration and safeguard of the collateral and to cover the reasonable and necessary expenses of the bankruptcy process due within the next 17 days, i.e. until the end of this month. The Debtor is also representing that Exhibit 2, is the monthly budget to apply for future six  months which will constitute  the permanent use of the cash collateral for the next six (6) months or until confirmation date, whichever is later.

8.   The Debtor, for the reasons stated above, herein requests authorization to use the cash collateral out of an abundance of caution and in order to preserve the estate, pay those expenses related to their Chapter 11 case and in furtherance of the reorganization process.

9.   Even though the Debtor will meet with BPPR to discuss the treatment of its claim under agreeable terms and conditions, as of this date there is no agreement and the bankruptcy Code requires that the debtor proceed with this request.

10.   The Debtor is in urgent need to keep current the monthly expenses during this period in order to avoid any disruption to its tenant and move forward in this critical stage of the reorganization process. A detailed budget of Debtors' interim operating expenses will be those needed up to the end of this month, while a final order is entered. Enclosed as **Exhibit 1 ( The Interim Budget).**

11.   The payment of these expenses is in jeopardy if the Debtor is not authorized to make the same from the cash collateral. The cash collateral is as of this time Debtor's primary source of income, therefore without the ability to use the same the Debtor will be unable to provide for these administrative expenses and proceed to a reorganization of its finances, without endangering the Debtor's operations and services to tenants.

12.   In the event the expenses detailed herein are not paid, the bankruptcy estate, the tenant and even BPPR's collateral will suffer hardship, actual and impending irreparable losses and damages that will preclude and halt Debtor's operations and reorganization under Chapter 11 of the Bankruptcy Code.

13.   Without funds from the monthly rents to provide for the Debtor's bankruptcy related and operating expenses, the collateral to BPPR will be jeopardized and Debtor's probability of reorganization will be in peril.

5

14.     The Debtor further need that this Honorable Court authorize a certain amount to be set aside on monthly basis to pay the fees to the professionals appointed by the Court, namely their counsel and accountants.  Furthermore, the Debtors also need to set aside certain amount on monthly basis for the payment of the Quarterly Fees to the United States Trustee.  Without the payment of these fees, as they are allowed and approved by this Honorable Court, the Debtor will be unable to have adequate representation in this reorganization process and maintain compliance with its obligations as a Debtor in Possession.

15.     With the use of the cash collateral requested herein the Debtor will be able to maintain its operating expenses, secure the collateral to BPPR, provide payment of the professionals appointed by this Honorable Court essential for the reorganization process and confirmation of the plan of reorganization and pay the Quarterly Fees to the United States Trustee, among others.

16.     The income derived from the rents will be used solely for the protection of the collateral, the operating expenses, payment of the bankruptcy related expenses and the adequate protection payment to BPPR as per the budget included in Exhibit 1.

### REQUEST FOR URGENT USE OF CASH COLLATERAL

1.     For purposes of preserving and maintaining the business operations and the continued income stream generated from the rents as further detailed above, Debtor requests any and all funds generated from the rents be remitted directly to Debtor, through the direct deposits of tenants at BPPR's account number 165252162 at Valencia Park Branch , Guaynabo, PR. to receive rental income and to cover operating and preservation expenses, including payments of principal and interest on the Loan(s) to BPPR.

2.  Debtor prays that this Honorable Court enter on urgent basis an order authorizing the Debtor to use the cash collateral in order to cover the immediate expenses detailed in the interim budget enclosed as **Exhibit 1, including the payment of principal and interest to BPPR's loan(s)**. These expenses are indispensable in order to secure the operations of the Debtor, payment to the employees and maintenance of the property.

3.  Thereafter, and after the hearing for the permanent use of the cash collateral is held, the Debtor requests that the Court allow the use of the rents in order to cover the expenses detailed in the permanent budget enclosed as **Exhibit 2,** for the next 180 days or until the confirmation of Debtor's Plan, whichever is later. This permanent budget covers all of the expenses that need to be paid at least until confirmation date.

4.  Debtors also pray that a scheduling Order be set in compliance with the provisions of 363 and 503(b) of Title 11 U.S.C. (the "Code"), Federal Rules of Bankruptcy Procedure 2002, 4001(b), and 9014 authorizing the Debtor's use of cash collateral, and/or permanent order authorizing use of cash collateral in the ordinary course of the Debtor's business as detailed in the budgets.

### PROTECTION TO POTENTIAL INTEREST OF PARTIES

5.  Pursuant to the records of the Debtor, the value of the entire collateral (real estate and rents) exceeds the amounts owed to BPPR, therefore its claim is adequately protected.

6.  Furthermore, Debtor purports that the specific conditions of this business, the hardship, irreparable losses and damages that the estate will face in the event these expenses are not covered during the reorganization process, outweigh any potential harm this request may have in parties with potential interest on these funds.

7. Absent payment of the immediate preservation and operating expenses the Debtor will be unable to cover its immediate expenses, including payroll, taxes, property maintenance and insurance. This will affect the cash inflow arising from the rents in detriment of the cash collateral itself. Creditors' interest in this cash collateral is subordinated to the expenses required to produce the cash collateral. Any potential interest on this cash collateral arises after payment of the operating and preservation expenses but not before.

8. The collateral (rents proceeds) in this case has not diminished in value. To the contrary, the same has remained stable by the Debtor's operations. The use of cash collateral proposed by the Debtors will allow that the collateral be preserved and its value be maintained. BPPR will maintain its interest and lien in the rents during the period proposed by the Debtors for the use of the cash collateral.[2] Thereafter, the confirmation of Debtors' plan of reorganization will provide a permanent treatment to the claim asserted by BPPR.

9. In order to provide BPPR with adequate protection for any diminution in the value of the collateral, Debtor proposes to grant BPPR replacement liens on the same type of post-petition property of the estate against which BPPR held liens as of the Petition Date, specifically the rents received.

10. As additional adequate protection to BPPR, the Debtor will make monthly payments on their pre-petition secured debt with BPPR in the amount of $ 69,222.00 including principal and interest at the rate of 4.75% and will maintain as collateral all of the new rents to be received.

11. The Debtor is also current in the post petition taxes and insurance over the real estate properties. The same have been maintained by the Debtor in optimal conditions, therefore satisfying the tenant's requests and insuring their stay in the premises.

---

[2] Subject to negotiations or in the event the issue becomes a contested matter, to the final determination of the Court.

12. Included as **Exhibit 3** is Debtor's statement under penalty of perjury in support of this motion.

13. Included as **Exhibit 4** is Debtor's proposed interim order for this Honorable Court to consider.

**WHEREFORE,** on the grounds detailed herein Debtor prays this Honorable Court as follows:

1. For an Interim Order on urgent basis, authorizing the Debtor to use of cash collateral comprised of funds received from the operation of its business to cover preservation and operating expenses of the business and the expenses related to the reorganization process, up to the end of this first month.  These funds will be used in accordance with the enclosed operating budget enclosed as **Exhibit 1**.[3]

2. For a scheduling order to consider the permanent use of cash collateral in the ordinary course of the Debtor's business as detailed in **Exhibit 2**.

3. For any additional remedy that is deemed just and fair.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico this 13th day of April 2016.

**I HEREBY CERTIFY** that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to the parties appearing in said system including the U.S. Trustee and by First Class mail to BPPR and all creditors and parties in interest as per the Master Address List herein attached.

<div style="margin-left:40%">

**C. CONDE & ASSOC.**
*/s/Carmen D. Conde Torres*
Carmen D. Conde Torres, Esq.
USDC No.: 207312
*/s/Luisa S. Valle Castro*
Luisa S. Valle Castro. Esq.
USDC No. 217611
254 San José Street, 5th Floor
Old  San  Juan,  Puerto  Rico    00901

</div>

---

[3] A proposed interim Order is herein included for the benefit of the Court and the urgency of the Debtor.

Telephone: 787-729-2900
Facsimile:  787-729-2203
E-Mail: ls.valle@condelaw.com



**Inmobiliara BAFCO, Inc.**
**Interim Budget – Cash Basis**

| | | |
|---|---|---:|
| RENT INCOME | $ | 137,992 |
| OTHER CASH INFLOW | $ | 772 |
| TOTAL CASH INFLOW | $ | 138,764 |

EXPENSES:

| | |
|---|---:|
| BUILDING PERSONNEL | 1,864 |
| SUPPLIES & SERVICES | 887 |
| WATER SUPPIES | 218 |
| WATER AND SEWER | 773 |
| ACCOUNTING | 400 |
| PROPERTY TAX | 6,551 |
| MUNICIPAL PATENTS | 702 |
| IVU SERVIECE TAX | 12 |
| INSURANCE | 3,664 |
| OFFICE MATERIALS | 25 |
| MAINTENANCE & REPAIR EX | 304 |
| ADMINISTRATIVE SERVICES | 2,250 |
| DUES - MOP | 2,476 |
| R & M - ELEVATORS | 1,813 |
| R & M - A/C VENTILATION | 2,595 |
| R&M-A/C VENTILATION-LABOR | 810 |
| R&M ELECTRICAL | 1,841 |
| R & M - FIRE & SECURITY SYSTEM | 63 |
| CLEANING SERVICE | 7,444 |
| PEST CONTROL MAINTENANCE | 139 |
| LANDSCAPING-LABOR | 461 |
| SECURITY | 878 |
| OFFICE GENERAL EXPENSES | 91 |
| TELEPHONE | 107 |
| ELECTRICITY | 27,525 |
| OTHER EXPENSES | 1,324 |
| BANK CHARGES EXPENSE | 25 |
| MISCELLANEOUS | 1,900 |

| | | |
|---|---|---:|
| Total Expenses | $ | 67,142 |
| | | |
| MORTGAGE LOAN, INCLUDES | | |
| PRINCIPAL & INTEREST AT 4.75% | $ | 69,222 |
| | | |
| TOTAL CASH OUTLAYS | $ | 136,364 |

**INMOBILIARIA BAFCO INC.**
**SIX MONTH BUDGET**

| | May-16 | Jun-16 | Jul-16 | Aug-16 | Sep-16 | Oct-16 |
|---|---|---|---|---|---|---|
| RENT INCOME | $ 137,992 | $ 137,992 | $ 137,992 | $ 137,992 | $ 137,992 | $ 137,992 |
| OTHER CASH INFLOW | 772 | 772 | 772 | 772 | 772 | 772 |
| TOTAL CASH INFLOW | $ 138,764 | $ 138,764 | $ 138,764 | $ 138,764 | $ 138,764 | $ 138,764 |
| **EXPENSES:** | | | | | | |
| BUILDING PERSONNEL | 1,864 | 1,864 | 1,864 | 1,864 | 1,864 | 1,864 |
| SUPPLIES & SERVICES | 887 | 887 | 887 | 887 | 887 | 887 |
| WATER SUPPIES | 218 | 218 | 218 | 218 | 218 | 218 |
| WATER AND SEWER | 773 | 773 | 773 | 773 | 773 | 773 |
| ACCOUNTING | 400 | 400 | 400 | 400 | 400 | 400 |
| PROPERTY TAX | 6,551 | 6,551 | 6,551 | 6,551 | 6,551 | 6,551 |
| MUNICIPAL PATENTS | 702 | 702 | 702 | 702 | 702 | 702 |
| IVU SERVICE TAX | 12 | 12 | 12 | 12 | 12 | 12 |
| INSURANCE | 3,664 | 3,664 | 3,664 | 3,664 | 3,664 | 3,664 |
| OFFICE MATERIALS | 25 | 25 | 25 | 25 | 25 | 25 |
| MAINTENANCE & REPAIR EX | 304 | 304 | 304 | 304 | 304 | 304 |
| ADMINISTRATIVE SERVICES | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 |
| DUES - MOP | 2,476 | 2,476 | 2,476 | 2,476 | 2,476 | 2,476 |
| R & M - ELEVATORS | 1,813 | 1,813 | 1,813 | 1,813 | 1,813 | 1,813 |
| R & M - A/C VENTILATION | 2,595 | 2,595 | 2,595 | 2,595 | 2,595 | 2,595 |
| R&M-A/C VENTILATION-LABOR | 810 | 810 | 810 | 810 | 810 | 810 |
| R&M ELECTRICAL | 1,841 | 1,841 | 1,841 | 1,841 | 1,841 | 1,841 |
| R & M - FIRE & SECURITY SYSTEM | 63 | 63 | 63 | 63 | 63 | 63 |
| CLEANING SERVICE | 7,444 | 7,444 | 7,444 | 7,444 | 7,444 | 7,444 |
| PEST CONTROL MAINTENANCE | 139 | 139 | 139 | 139 | 139 | 139 |
| LANDSCAPING-LABOR | 461 | 461 | 461 | 461 | 461 | 461 |
| SECURITY | 878 | 878 | 878 | 878 | 878 | 878 |
| OFFICE GENERAL EXPENSES | 91 | 91 | 91 | 91 | 91 | 91 |
| TELEPHONE | 107 | 107 | 107 | 107 | 107 | 107 |
| ELECTRICITY | 27,525 | 27,525 | 27,525 | 27,525 | 27,525 | 27,525 |
| PROFESSIONAL SERVICES | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| OTHER EXPENSES | 1,324 | 1,324 | 1,324 | 1,324 | 1,324 | 1,324 |
| BANK CHARGES EXPENSE | 25 | 25 | 25 | 25 | 25 | 25 |
| US TRUSTEE | 900 | 900 | 900 | 900 | 900 | 900 |
| MISCELLANEOUS | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 | 1,900 |
| Total Expenses | $ 69,542 | $ 69,542 | $ 69,542 | $ 69,542 | $ 69,542 | $ 69,542 |
| MORTGAGE LOAN, INCLUDES | | | | | | |
| PRINCIPAL & INTEREST AT 4.75% | $ 69,222 | $ 69,222 | $ 69,222 | $ 69,222 | $ 69,222 | $ 69,222 |
| TOTAL CASH OUTLAYS | $ 138,764 | $ 138,764 | $ 138,764 | $ 138,764 | $ 138,764 | $ 138,764 |

Exhibit 3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT COURT OF PUERTO RICO

IN RE:

**INMOBILIARIA BAFCO, INC.**

Debtor

CASE NO.: 16-02642 (BKT)

CHAPTER 11

## UNSWORN DECLARATION UNDER PENALTY OF PERJURY IN SUPPORT TO THE MOTION FOR USE OF CASH COLLATERAL

I, Fernando Batlle , of legal age, married , of the vicinity of Guaynabo, Puerto Rico, and President of Inmobiliaria BAFCO, Inc., DECLARE, under penalty of perjury, as follows:

1. That my personal circumstances are those stated above.

2. That I have been designated as the authorized person to file this bankruptcy petition and one of the persons to sign any other documents pertaining to such filing and requests to the Court.

3. That I have read the urgent motion for use of cash collateral.

4. Debtor's main business is the lease of a commercial real estate property located at Metro Office Park, Calle 2 #14, Guaynabo, Puerto Rico.

5. Prior to the filing of the bankruptcy petition the Debtor entered into several financial obligations with BPPR, as follows:

| Credit Facility | Principal | Interest |
|---|---|---|
| Credit Facility A | $10,197,924.41 | $25,828.07 |
| Credit Facility B | $1,573,899.84 | $5,814.69 |

6. The Debtor and Westernbank de Puerto Rico (Westernbank), now Banco Popular de Puerto

Rico (BPPR) entered into these facilities in order to purchase the real estate property, obtain credit for operations and pay certain obligations. The same suffered several amendments over the course of time.

7. On or about 2006, the Debtor also executed an assignment of rents in favor of Westernbank, now BPPR under UCC No. 2006016602.

8. Currently, the Debtor is leasing the real estate property to various tenants. The majority of these tenants make direct deposits of rents to Debtor's account at BPPR No. 165252162.

9. The Debtor receives a total monthly rent of $137,992.00.

10. The Debtor, for the reasons stated in the motion for use of cash collateral requests authorization to use the cash collateral on an interim basis and according to the budget included as Exhibit 1, in order to maintain their operations, preserve the estate, taxes, insurance, utilities and all other necessary expenses therein included. The Debtor also requests that, after notice and a hearing, it be allowed the permanent use of the cash collateral submit as provided for in the budget included as Exhibit 2.

11. That the Debtor is in need to keep current the expenses mentioned above during this interim period in order to avoid any disruption to the operations and move forward in the bankruptcy process.

12. That I have read the Urgent Motion for Use of Cash Collateral, and I attest to the representations therein made by the Debtor as literarily transcribe herein.

13. Allowing the Debtor to continue its regular business operations will be in the best position to protect the interests of the estate and the interests of the creditors.

14. This declaration and the facts included in the motion for use of cash collateral are to the best of my knowledge, true and correct.

15. That I make this declaration under the penalty of perjury.

Signed in San Juan, Puerto Rico today April 13, 2016.

By: Fernando Batlle
President
Inmobiliaria BAFCO, Inc.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT COURT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO.: 16-02642 (MCF) |
| INMOBILIARIA BAFCO, INC | CHAPTER 11 |
| Debtor | |

## ORDER APPROVING DEBTOR'S EMERGENCY USE OF CASH COLLATERAL WITHOUT HEARING, GRANT OF REPLACEMENT LIENS AND ORDER SCHEDULING HEARING TO CONSIDER PERMANENT USE OF CASH COLLATERAL

On April 13, 2016, Inmobiliaria Bafco, In. as Debtor in Possession for the above-captioned case (hereinafter referred to as "Debtor"), filed an *Urgent Motion for Use of Cash Collateral and For Approval of Interim Order* ("The Motion") in order to request from the Court pursuant to 11 U.S.C. § 105, 11 U.S.C. § 363 and Bankruptcy Rules of Procedure 2002, 4001(b), 9014 and Local Bankruptcy Rule 4001-2, the following:

    a.  For an Interim Order authorizing the Debtors to use of cash collateral comprised of funds received from the operation of its business to cover preservation and operating expenses of the business and the expenses related to the reorganization process, for at least seventeen days, i.e., until the end of the first month of operations. These funds will be used in accordance with the enclosed interim operating budget enclosed as Exhibit 1 to the Motion.

    b.  For a scheduling order to consider the permanent use of cash collateral in the ordinary course of the Debtors' business as detailed in Exhibit 2 to the Motion.

    c.  To grant BPPR replacement liens on the same type of post-petition property of the estate against which BPPR held liens as of the Petition Date, specifically the rents received.

    d.   To authorize the Debtors to make monthly payments on the principal and interest of the pre-petition secured debt with BPPR in the amount of $69,222.00 as additional adequate protection to BPPR, including principal and interest at the rate of 4.75%.

The Debtor requires the relief requested in the Motion in order to continue the operations, avoid immediate and irreparable harm to the bankruptcy estate and creditors and to preserve its going concern.  Pursuant to Local Bankruptcy Rule 4001-2(c), Debtor supplemented the emergency motion with an interim budget as Exhibit 1 and a unsworn statement under penalty of perjury attached as Exhibit 3.

The above captioned bankruptcy petition was filed on April 4, 2016.  Debtor's main business is the lease of a commercial real estate property located at Metro Office Park, Calle 2#14, Guaynabo, Puerto Rico.  Prior to the filing of the bankruptcy petition the Debtor entered into several financial obligations with Banco Popular de Puerto Rico ("BPPR").[1]  These financial obligations are secured with liens over the real estate property.  On or about 2006, the Debtor also executed an assignment of rents in favor of Westernbank de Puerto Rico , now BPPR under UCC No. 2006016602 as additional collateral to the loans.

Currently, the Debtor is leasing the real estate property to various entities all listed on Debtors Schedule G.  See Docket No. 1.

Debtor requests authorization to use the cash collateral on an interim basis and according to the budget included as Exhibit 1 to the Motion, in order to maintain their operations, preserve the estate, pay their payroll, taxes, insurance, utilities and all other necessary expenses therein

---

[1] Canejas S.E. also filed on April 4, 2016 a Chapter 11 bankruptcy petition, case no.: 16-02644 (MCF).  The Debtors will be requesting substantive consolidation after the Section 341 Meeting of Creditors is held and closed.

2

included.  The Debtor also requests that, after notice and a hearing, they be allowed the permanent use of the cash collateral submit as provided for in the budget included as Exhibit 2 to the Motion.

Debtor's projection of income and an itemized interim budget for the next 15 days, until the end of the first month is attached to its motion as Exhibit 1.  For the next 15 days, Debtor anticipates incurring $136,364.00 in expenses while at the same time receiving at least the same amount in new funds in incoming receipts.

During the course of the next 15 days, i.e, until the end of this first month, Debtor requests that this Court issue an interim order allowing the use of cash collateral that is substantially in accord with Debtor's Budget, attached as Exhibit 1 without a hearing as provided by the Bankruptcy Rules.  Debtor also requests this Court to note that over the next 15 days Debtor projects that the incoming cash receipts will be in an amount equal to at least their cash outlays resulting in no net diminution in their cash holdings.

Debtor has also submitted as Exhibit 2 a budget for the permanent use of the cash collateral in order for the court to consider the same.  All expenses to be incurred over these periods are a direct result of Debtor continuing to operate in the normal course of its business activities.  Pursuant to Federal Bankruptcy Rule 4001(b)(2), Debtor request that this Court authorize the use of the cash collateral on an emergency basis without a hearing, until the Court can schedule a final hearing on the continued and permanent  use of the cash collateral.

<div align="center">FINDINGS OF THE COURT</div>

Debtor must be able to comply with its current operating expenses including, payment of medical insurance for employees, payment of payroll, payroll taxes, insurance, among others, in order to maintain operations.  If Debtor is unable to meet these immediate operating expenses it

<div align="center">3</div>

will have to cease operations. If Debtor is not granted permission to use the cash collateral to cover regular business expenses, then Debtor, Debtor's estate, Debtor's creditors, and the community at large will suffer substantial injury.

If the Debtor does not receive permission from this Court to use the cash collateral to cover its regular business operating expenses, then Debtor shall be forced to close and will be unable to maintain proper maintenance and care for Debtor's assets, including the leases. If Debtor cannot protect its assets, then the value of Debtor's' estates is seriously imperiled. Accordingly, Debtor's ability to maintain its going concern will be compromised. Debtor's creditors will also be negatively affected because the value of Debtor's estate could be substantially reduced and its reorganization in peril.

Upon the above findings the Court orders as follows:

- The Debtor is authorized to use of the cash collateral <u>without a hearing for an emergency period of 15 days</u>, i.e., until the end of the first month, under the provisions of 11 U.S.C. 363, FRBP 4001 (b) and LRBP 4001-2 and only to the Extent of the Interim Budget in Exhibit 1 which forms part of this Order.

- BPPR is granted during this period replacement liens to pursuant to 11 U.S.C. § 361, but only to the extent described in the Motion, in order to provide adequate protection for the use of its cash collateral.

- Debtor is authorized to make monthly payments on the principal of the pre-petition secured debt with BPPR in the amount of at least $69,222.00 including interest at the rate of 4.75%, as additional adequate protection to BPPR.

- A hearing to consider the permanent us of the use of cash collateral is scheduled for

4

_____, 2016.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this ___ April,  2016.


_____

Mildred Caban Flores
U.S. Bankruptcy Judge

Label Matrix for local noticing
0104-3
Case 16-02642-MCF11
District of Puerto Rico
Old San Juan
Wed Apr 13 10:30:54 AST 2016

INMOBILIARIA BAYCO, INC.
METRO OFFICE PARK
CALLE 1 #7
SUITE 204
GUAYNABO, PR 00968-1718

US Bankruptcy Court District of P.R.
Jose V Toledo Fed Bldg & US Courthouse
300 Recinto Sur Street, Room 109
San Juan, PR 00901-1964

BANCO POPULAR DE PR
SPECIAL LOAN DIVISION
PO BOX 70354
SAN JUAN, PR 00936-8354

BBDO
METRO OFFICE PARK
CALLE 2 #14  SUITE 400
GUAYNABO, PR 00968-1737

BORINQUE CONTAINER CORP.
PO BOX 145170
ARECIBO, PR 00614-5170

COR VEL
METRO OFFICE PARK
CALLE 2 #14  SUITE 101
GUAYNABO, PR 00968-1720

COR VEL HEALTH CORP.
METRO OFFICE PARK
CALLE 2 #14  SUITE 101
GUAYNABO, PR 00968-1720

CRIM
PO BOX 195387
SAN JUAN, PR 00919-5387

DELTA DENTAL OF PR, INC.
METRO OFFICE PARK
CALLE 2 #14  SUITE 200
GUAYNABO, PR 00968-1735

DEPARTAMENTO DE HACIENDA
PO BOX 9024140
SAN JUAN, PR 00902-4140

DEPARTAMENTO DE JUSTICIA DE PR
FEDERAL LITIGATION DIVISION
PO BOX 9020192
SAN JUAN, PR 00902-0192

DIEGO CHEVERE
MANSIONES DE TINTILLO HILLS
12 CALLE 3
GUAYNABO, PR 00966-1693

FERNANDO BLATLLE
COND PLAZA ATHENEE
101 AVE. ORTEGON APT# 301
GUAYNABO, PR 00966-2522

FLUOR DANIEL CARIBBEAN, INC
METRO OFFICE PARK
CALLE 2 #14 SUITE 500
GUAYNABO, PR 00968-1738

INOVALON
4321 COLLINGTON ROAD
BOWIE, MD 20716-2646

IRS
CITIVIEW PLAZA NO II
48 CARR 165 SUITE 2000
GUAYNABO, PR 00968-8000

IRS
PO BOX 7346
PHILADELPHIA, PA 19101-7346

JI COMMUNICATION, INC.
METRO OFFICE PARK
CALLE 2 #14
GUAYNABO, PR 00968-1706

LIFE LINK FOUNDATION, INC.
METRO OFFICE PARK
CALLE 1 #1  SUITE 100
GUAYNABO, PR 00968-1729

MARGARITA TORO DE FIGUEROA
URB. TORRIMAR
10 - 29  PASEO ALHAMBRA
GUAYNABO, PR 00966

MARIO M. ORONOZ
URB. TORRIMAR
K-4  BAMBOO DRIVE
GUAYNABO, PR 00966-3144

MCGRAW-HILL INTERAMERICANA
METRO OFFICE PARK
CALLE 2 #14  SUITE 100
GUAYNABO, PR 00968-1720

MEDDEV TECHNOLOGIES
1353 AVE. LUIS VIGOREAUX
PMB  392
GUAYNABO, PR 00966-2715

METRO OFFICE PARK PROPERTY OWNERS ASSOC.
METRO OFFICE PARK
CALLE 2 #14  SUITE 324
GUAYNABO, PR 00968-1706

MILLER COORS PR, INC.
METRO OFFICE PARK
CALLE 2 #14  SUITE 300
GUAYNABO, PR 00968-1720

NOVO NORDISK
METRO OFFICE PARK
CALLE 2 #14  SUITE 212
GUAYNABO, PR 00968-1720

OXNI REALTY PARTNERS CORP.
METRO OFFICE PARK
CALLE 2 #14  SUITE 305
GUAYNABO, PR 00968-1751

ONE SOURCE FACILITY SERV., INC.
ROAD #189  KM. 3.3  BO. RINCON
TURABO IND. PARK  LOT 2B
GURABO, PR 00778

ONESOURCE FACILITY SERV.
PO BOX 935457
ATLANTA, GA 31193-5457

FARCOM
PO BOX 466
BAYAMON, PR 00960-0466

PHARMA IND. ASSOC. OF PR, INC.
METRO OFFICE PARK
CALLE 2  #14  SUITE 350
GUAYNABO, PR 00968-1779

PIETRANTONI MENDEZ & ALVAREZ
BANCO POPULAR CENTER  PISO 19
208 PONCE DE LEON AVE.
SAN JUAN, PR 00918-1010

PREPA
PO BOX 363508
SAN JUAN, PR 00936-3508

RCM TECHNOLOGIES, INC.
METRO OFFICE PARK
CALLE 2  #14  SUITE 320
GUAYNABO, PR 00968-1720

REGUS BUSINESS CENTRE OF PR., INC.
METRO OFFICE PARK
CALLE 1  #7  SUITE 204
GUAYNABO, PR 00968-1718

SAMUEL FLORES  A/C
HC-01 BOX 11060
CAROLINA, PR 00987-9653

SCIENTIFIC GAMES
EL MUNDO OFFICE BUILDING
383 AVE. F.D. ROOSEVELT  SUITE 109
SAN JUAN, PR 00918

SKY ELECTRICAL & MAINTENANCE SERV., INC.
PO BOX 6293
CAGUAS, PR 00726-6293

THYSSEN KRUPP ELEVATOR AMERICAS
CARR #1 KM. 25.5 CAMINOS LOS NAVARR
BO. QUEBRADA ARENAS
CAGUAS, PR 00725

UNIVERSAL EQUIPMENT SALES & SERVICES
PO BOX 194048
SAN JUAN, PR 00919-4048

US DEPARTMENT OF JUSTICE
950 PENNSYLVANIA AVE., NW
WASHINGTON, DC 20530-0001

WARNER BROS., INC.
METRO OFFICE PARK
CALLE 2  #14  SUITE 105
GUAYNABO, PR 00968-1788

CARMEN D CONDE TORRES
254 SAN JOSE STREET
5TH FLOOR
SAN JUAN, PR 00901-1523

MONSITA LECAROZ ARRIBAS
OFFICE OF THE US TRUSTEE (UST)
OCHOA BUILDING
500 TANCA STREET  SUITE 301
SAN JUAN, PR 00901

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)AWS CARIBBEAN
UNKNOWN

(d)FLUOR DANIEL CARIBBEAN, INC.
METRO OFFICE PARK
CALLE 2  #14 SUITE 500
GUAYNABO, PR 00968-1738

(u)MARKUP LANGUAGE DEVLMET.
UNKNOWN

(d)PHARMA. IND. ASSOC. OF PR, INC.
METRO OFFICE PARK
CALLE 2  #14  SUITE 350
GUAYNABO, PR 00968-1779

End of Label Matrix
Mailable recipients    44
Bypassed recipients     4
Total                  48